OLIVIER A. TAILLIEU (SBN 206546)
  otaillieu@ztllp.com
SARAH S. BROOKS (SBN 266292)
  sbrooks@ztllp.com
**ZUBER & TAILLIEU LLP**
777 S. Figueroa Street, 37th Floor
Los Angeles, California  90017
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant JASON BARNES, p/k/a JAZAN WILD

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANDREAS CARLSSON PRODUCTIONS, AB, a Swedish Corporation, and ANDREAS CARLSSON, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> JASON BARNES, p/k/a JAZAN WILD, an individual, and DOES 1-10, <br><br> Defendants. | CASE NO. CV 10-8396-CAS (CWx) <br><br> **DEFENDANT JASON BARNES P/K/A JAZAN WILD'S FIRST AMENDED COUNTERCLAIMS AGAINST ANDREAS CARLSSON PRODUCTIONS, AB AND ANDREAS CARLSSON** <br><br> **JURY TRIAL DEMANDED** |
| JASON BARNES, p/k/a JAZAN WILD, an individual <br><br> Counterclaimant <br><br> v. <br><br> ANDREAS CARLSSON PRODUCTIONS, AB, a Swedish Corporation, and ANDREAS CARLSSON, an individual, <br><br> Counter-defendants. | The Honorable Christina A. Snyder |

Without waiving any of its defenses, Defendant and counterclaimant Jason Barnes p/k/a Jazan Wild ("Barnes" or "counterclaimant") by and through his undersigned attorneys respectfully alleges the following counterclaims against Plaintiffs and Counter-defendants Andreas Carlsson Production AB, and Andreas Carlsson (collectively "Carlsson" or "counter-defendants").

### NATURE OF ACTION AND RELIEF SOUGHT

1. This is an action that concerns the rights, credits and compensation due for five separate novels. The foregoing counterclaims include breach of contract, copyright infringement pursuant to 17 U.S.C. §101 et. seq., declaratory judgment of copyright ownership, breach of the covenant of good faith and fair dealing, negligent misrepresentation and fraud in the inducement.

### PARTIES

2. Defendant and counterclaimant Jason Barnes, p/k/a Jazan Wild ("Barnes" or "counterclaimant") is an individual who resides and conducts business in the County of Los Angeles.

3. Plaintiff and counter-defendant Andreas Carlsson Productions AB is a Swedish corporation having a place of business in Sweden and the County of Los Angeles and does business in both Sweden and the County of Los Angeles.

4. Plaintiff and counter-defendant Andreas Carlsson is an individual who is a resident of Sweden and who also resides and conducts business in the County of Los Angeles.

### JURISDICTION AND VENUE

5. This action arises under the Copyright Laws of the United States. (17 U.S.C. §101 et. seq.). Accordingly, this Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

6. This Court also has supplemental jurisdiction over state law claims alleged herein pursuant to 28 U.S.C. §1367.

7. Jurisdiction is also appropriate pursuant to 28 U.S.C. §1332 (a) because

1   there is complete diversity of citizenship between the parties and the amount in

2   controversy exceeds $75,000.00.

3       8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391

4   (b)(1), 28 U.S.C. §1391 (d) because the events or omissions which give rise to these

5   claims occurred in this judicial district and because defendants are aliens who may

6   be sued in any district.

7                           **FACTUAL ALLEGATIONS**

8       9.      Barnes is a writer and musician and owns a comic book company

9   called Carnival Comics.  Carnival Comics was the first comic book company to

10  offer comic books on Blackberry and Nokia phones and was featured in the Los

11  Angeles Times for being the first comic book on Blackberry.  Carnival Comics was

12  also one of the first comic book companies to offer comic books that could be

13  downloaded onto mobile devices such as iPhone, iPad and Android.

14      10.     In 2009, Carnival Comics was named Nokia's 2009 Success Story for

15  being the first comic on their phones and also having reached over 200 countries

16  with their comics.  Carnival Comics was also named #4 on Entertainment Weekly's

17  "Must List" for the Halloween Edition of their magazine.

18      11.     Indeed, Barnes has written and created some of the most downloadable

19  books in the last decade with over 1 million books downloaded from Nokia,

20  Blackberry, Android, iPhone and iPad devices.  On Blackberry's App. World,

21  Barnes' *Carnival of Souls* graphic novel was the #1 ebook for almost a year.

22      12.     Around March of 2006, Barnes received a call from Gene Simmons

23  ("Simmons") of the world-renown band KISS to create a graphic novel.  Barnes and

24  Simmons worked together on a comic book series entitled *House of Horrors*, in

25  which Barnes was the writer.  Barnes also worked on his own comic book series

26  entitled *Carnival of Souls* that was published through the Simmons Comic Group.

27      13.     In the *Carnival of Souls* series, Barnes used his talent as a musician to

28  create a CD that is a soundtrack for the comic book.  The CD was produced by

1    Grammy Award winning producer Bob Kulick.

2    14.    Barnes promoted his *Carnival of Souls* series at comic book

3    conventions and KISS expos around the world.

4    15.    Counter-defendant Andreas Carlsson ("Carlsson") is an esteemed

5    songwriter and has written songs for some of the world's best-selling singers and

6    bands, including Celine Dion, Katy Perry, LeAnn Rimes, Britney Spears, Carrie

7    Underwood, 'N Sync and -on Jovi.

8    16.    Carlsson also worked on a KISS-related album and it was through

9    Barnes' work with Simmons that Carlsson because acquainted with his work and

10   was particularly interested in the concept of doing music and comic books.  Around

11   November, 2006 Carlsson contacted Barnes regarding a project that he said would

12   eventually become a musical in Las Vegas.

13   17.    Carlsson's idea was to create a story of a rich guy moving to Las Vegas

14   and becoming successful.  Carlsson asked Barnes to write the story, while he would

15   write the songs for the musical.  At the time, Barnes believed that he and Carlsson

16   were 50/50 partners.

17   18.    On November 20, 2006, Barnes created the basic storyline called

18   *Dandyworld*, and registered his story with the Writers Guild of America ("the

19   treatment").  Barnes' *Dandyworld* story was a work of fiction that sprung from his

20   own imagination.  The story was not based on anyone in Barnes' life or in

21   Carlsson's life.  Rather, the story described a young, wealthy boy whose father was

22   arrested for embezzlement.  After this incident, the boy was taken to an orphanage

23   where one night he heard music through his window and escaped to a magical

24   nightclub where he would eventually perform and become known as "Dandy."

25   19.    After creating the treatment, Barnes and Carlsson continued to work

26   together.  Then, in late January, 2007, Carlsson approached Barnes and asked him to

27   sign an agreement pertaining to the treatment. Carlsson told Barnes that they were

28   partners and that if he signed the agreement his hard work would "pay off."  Barnes

4

1   understood that if he signed the agreement with Carlsson, he would receive a
2   significant sum of money based on the success of the books and musical as well as
3   receive credit for his work once the project became a novel, musical, or movie.

4       20.    Therefore, on February 2, 2007 Barnes and Carlsson entered into an
5   agreement that offered Barnes $7500.00 total in fixed compensation and certain
6   contingent compensation in exchange for signing the agreement and writing the
7   treatment.

8       21.    Pursuant to paragraph 2 (a) of the February 2, 2007 agreement, Barnes
9   received $3750.00 upon signing the agreement and another $3750.00 upon delivery
10  of the treatment.

11      22.    Pursuant to paragraph 2(b) of the February 2, 2007 agreement, Barnes
12  would receive certain contingent compensation.  If the treatment was used in a
13  comic book or other literary work, Carlsson would pay Barnes 25% of the net
14  receipts from such comic book or other literary work and 12% of net receipts from
15  merchandising and other commercial activities.  In addition, the agreement provided
16  that in the event that the treatment "is substantially used in the production of a
17  motion picture, television program, musical and/or stage play," Carlsson shall pay
18  Barnes 12% of the net receipts from the exploitation of that "motion picture,
19  television program, musical and/or stage play."

20      23.    According to the agreement, the contingent compensation was to be
21  paid "within forty-five (45) days after Company's actual receipt of the applicable
22  funds."  In addition, the agreement specified that "[p]ayment shall be accompanied
23  by a detailed accounting statement."

24      24.    In addition, the February 2, 2007 agreement contained a "most favored
25  nations" clause whereby if the treatment was substantially used in the production of
26  a comic book or other literary work, Barnes was to receive a credit in the form of
27  "created by Andreas Carlsson and Jazan Wild."

28      25.    After signing the February 2, 2007 agreement, Barnes and Carlsson

1   continued to work together and agreed to make the "Dandy" concept into a three-
2   book series.  Barnes wrote, scripted and created the graphic novel *Dandy: Welcome*
3   *to a Dandyworld.*

4          26.    Around May 25, 2007, Barnes wrote the final two treatments/stories in
5   the trilogy entitled *Dandy: Step Into the Krazy Life* and *Dandy: All Hail the King*
6   and registered the stories with the Writers Guild of America, Inc.

7          27.    Subsequently, on September 19, 2007 Barnes and Carlsson entered into
8   another agreement which was an amendment to the February 2, 2007 agreement and
9   pertained to the *Dandy: Step Into the Krazy Life* and *Dandy: All Hail the King*
10   graphic novels.

11          28.    The September 19, 2007 agreement offered Barnes $7500 in total fixed
12   compensation per graphic novel and certain contingent compensation in exchange
13   for agreeing to write the graphic novels and for writing the graphic novels.

14          29.    Pursuant to paragraph 2 of the September 19, 2007 agreement, Barnes
15   received $3750.00 in fixed compensation per graphic novel upon advising Carlsson
16   that he was available to write *Dandy: Step Into the Krazy Life* and *Dandy: All Hail*
17   *the King*.  Also pursuant to paragraph 2, Barnes received $3750.00 in fixed
18   compensation per graphic novel upon completing the writing of *Dandy: Step Into*
19   *the Krazy Life* and *Dandy: All Hail the King.*

20          30.    Barnes was also offered increased contingent compensation pursuant to
21   paragraph 3 of the September 19, 2007 agreement .  Barnes' contingent
22   compensation for the *Dandy: Step Into the Krazy Life* and *Dandy: All Hail the King*
23   novels increased from 25% to 50% of net receipts from such comic book or other
24   literary work and from 12% to 20% of net receipts from merchandising and other
25   commercial activities <u>and</u> from 12% to 20% of net receipts from the exploitation of
26   a "motion picture, television program, musical and/or stage play."

27          31.    The September 19, 2007 agreement also contained an option clause
28   whereby Carlsson was to give written notice to Barnes of the option to engage his

6

1  services in writing two more graphic novels "tentatively entitled Dandy: Step Into
2  the Krazy Life ("Krazy") and Dandy: All Hail the King ("King")."

3      32.     Although the option was never exercised in writing by Carlsson, Barnes
4  and Carlsson continued to work together on the Dandy trilogy, including *Dandy:*
5  *Step Into the Krazy Life* and *Dandy: All Hail the King*.  And, Barnes received his
6  full fixed compensation payments in the form of six separate payments of $3750.00
7  for fulfilling his obligations under the February 2, 2007 and September 19, 2007
8  agreements.

9      33.     On approximately October, 2009, the general manager of Andreas
10  Carlsson Productions AB asked Barnes for the text files from the three *Dandy*
11  novels so that they could be translated into Swedish.

12      34.     Barnes subsequently sent the text files from the three *Dandy* novels to
13  the general manager of Andreas Carlsson Productions AB.

14      35.     Thereafter, in April, 2010, Carlsson promised Barnes that the three
15  *Dandy* novels would be published in September, 2010.

16      36.     Despite these promises, however, the three *Dandy* novels were not
17  published in September 2010.

18      37.     Around June, 2010, Barnes contacted Carlsson to inquire as to when
19  the *Dandy* novels would be published.  He was then told that they would be
20  published in the Spring, 2011.  The *Dandy* novels have not been published to date.

21      38.     In fact, Barnes has never received a final copy of the *Dandy* trilogy in
22  hardcover.  Instead, around 2008, Carlsson gave Barnes a black covered
23  promotional book titled *Dandy The Trilogy*.  This promotional book clearly
24  displayed the names "Andreas Carlsson and Jazan Wild" on the side binding as well
25  as crediting Barnes as a co-creator of the three Dandy stories and the sole scriptor of
26  the three stories.

27      39.     Also around June, 2010 Barnes learned that Carlsson would be
28  publishing a novel in Sweden.  Carlsson told Barnes that he wrote a novel similar to

7

1   "Twilight."

2        40.     Subsequently, Barnes discovered that the Swedish novel was not

3   written by Carlsson, but was based on the three *Dandy* novels that Barnes himself

4   wrote.  After learning this, Barnes contacted Carlsson to confirm that he would be

5   given proper credit as writer and co-creator of the *Dandy* novels.  Carlsson

6   confirmed that he would be given proper credit.

7        41.     Thereafter, on approximately, October 19, 2010, Carlsson published the

8   novel entitled *Dandy* by Andreas Carlsson in Sweden ("the Swedish *Dandy* novel")

9   based on the three *Dandy* graphic novels.

10       42.     Despite Carlsson's assurances, the cover of the Swedish *Dandy* novel

11  lists only Andreas Carlsson as the author.  On the inside cover of the novel, it says

12  that the novel was inspired by a graphic novel created by Andreas Carlsson and

13  Jazan Wild.

14       43.     Barnes has received no contingent compensation pursuant to either the

15  February 2, 2007 agreement or the September 19, 2007 agreement nor has he

16  received a detailed accounting statement based on net receipts of the Swedish *Dandy*

17  novel.

18       44.     In October 2010, Carlsson filed copyright applications on the treatment

19  and on the three Dandy novels: *Dandy: Welcome to a Dandyworld, Dandy: Step*

20  *Into the Krazy Life* and *Dandy: All Hail the King*.

21       45.     In December, 2010, Barnes filed copyright applications on the

22  treatment and on the three Dandy novels: *Dandy: Welcome to a Dandyworld,*

23  *Dandy: Step Into the Krazy Life* and *Dandy: All Hail the King, A DANDY STORY By*

24  *Jazan Wld (Book One), A DANDY STORY By Jazan Wild(Books Two and Three,*

25  and *A DANDY STORY By Jazan Wild (Graphic Novel Text)*.

26

27

28

8

DEFENDANT JASON BARNES P/K/A JAZAN WILD'S FIRST AMENDED COUNTERCLAIMS
AGAINST ANDREAS CARLSSON PRODUCTIONS

# FIRST CAUSE OF ACTION

## (Breach of Contract)

46. Barnes incorporates by reference all of the above paragraphs as if fully set forth herein.

47. Carlsson and Barnes entered into a contractual relationship for writing the treatment, *Dandy: Step Into the Krazy Life* and *Dandy: All Hail the King* graphic novels.

48. Barnes fully performed his obligations under the contracts by agreeing to write and by writing the treatment, *Dandy: Step Into the Krazy Life* and *Dandy: All Hail the King* graphic novels.

49. Barnes received fixed compensation for writing the treatment, *Dandy: Step Into the Krazy Life* and *Dandy: All Hail the King* graphic novels.

50. Carlsson also owed certain contingent compensation to Barnes based on the sale of the Swedish *Dandy* novel and under which Barnes was entitled to credit in the form of "created by Andreas Carlsson and Jazan Wild" on a "most favored nations" basis.

51. Carlsson's actions as set forth herein constitute a breach of contract.

52. This breach of contract by Carlsson is the direct and proximate cause of damages to Barnes in an amount to be proven at trial.

# SECOND CAUSE OF ACTION

## (Breach of the Covenant of Good Faith and Fair Dealing)

53. Barnes incorporates by reference all of the above paragraphs as if fully set forth herein.

54. Barnes and Carlsson had a contractual agreement supported by valuable consideration.

55. Barnes fully performed his obligations under the contracts by agreeing to write and by writing the treatment and *Dandy: Step Into the Krazy Life* and *Dandy: All Hail the King* graphic novels.

56.     Carlsson breached the implied covenant of good faith and fair dealing by intentionally not giving Barnes proper credit for the Swedish *Dandy* novel and by intentionally not giving Barnes the contingent compensation owed to him pursuant to the February 2, 2007 and September 19, 2007 agreements.

57.     These breaches by Carlsson of the covenant of good faith and fair dealing are the direct and proximate cause of damages to Barnes in an amount to be proven at trial.

58.     Carlssons' conduct and actions set forth herein were attended by willful and wanton disregard for the rights of Barnes, entitling Barnes to punitive damages.

## THIRD CAUSE OF ACTION

### (Declaratory Judgment of Copyright Ownership)

59.     Barnes incorporates by reference all of the above paragraphs as if fully set forth herein.

60.     A real and justiciable controversy exists between Carlsson and Barnes as to who owns the copyright in the three *Dandy* novels.

61.     The *Dandy: Welcome to a Dandyworld* novel was written by Barnes and was not covered by any agreement between Barnes and Carlsson.

62.     In addition, the *Dandy: Step Into the Krazy Life* and *Dandy: All Hail the King* novels were written by Barnes and were not covered by any agreement between Barnes and Carlsson.

63.     Barnes seeks a declaratory judgment from this Court which declares that the copyright in the three *Dandy* novels is owned by Barnes within the meaning of the Copyright Act, 17 U.S.C. § 101 et seq.

## FOURTH CAUSE OF ACTION

### (Copyright Infringement)

64.     Barnes incorporates by reference all of the above paragraphs as if fully set forth herein.

65.     Barnes owns the copyrights to the treatment and on the three Dandy

1  novels: *Dandy: Welcome to a Dandyworld, Dandy: Step Into the Krazy Life* and
2  *Dandy: All Hail the King.*

3      66.    In December, 2010, Barnes filed separate copyright applications on the
4  treatment and on the three Dandy novels: *Dandy: Welcome to a Dandyworld,*
5  *Dandy: Step Into the Krazy Life* and *Dandy: All Hail the King.*

6      67.    Carlsson intentionally and willfully infringed Barnes' copyright by
7  publishing the Swedish *Dandy* novel which as described herein is based on the three
8  *Dandy* novels.

9      68.    As a direct and proximate result thereof, Barnes has been injured, in an
10  amount presently unknown and to be determined at time of trial, by reason of
11  Carlssons' intentional acts.

12      69.    Barnes is entitled to attorneys fees and costs pursuant to 17 U.S.C.
13  §505.

14      70.    The injury that Barnes has suffered and continues to suffer unless
15  Carlssons' acts of infringement are enjoined is irreparable.

16      71.    Barnes has no adequate remedy at law.

17                      **FIFTH CAUSE OF ACTION**
18                      (Negligent Misrepresentation)

19      72.    Barnes incorporates by reference all of the above paragraphs as if fully
20  set forth herein.

21      73.    As described herein, Carlsson made certain representations to induce
22  Barnes to enter into the agreements that were untrue, inaccurate and/or misleading.

23      74.    Barnes relied on the negligent misrepresentation to his detriment.
24  Carlsson's misrepresentations to Barnes are the direct and proximate cause of his
25  damages in an amount to be proven at trial.

26  / / /
27  / / /
28  / / /

1

## **<u>SIXTH CAUSE OF ACTION</u>**

2

(Fraud in the Inducement)

3     75.     Barnes incorporates by reference all of the above paragraphs as if fully

4  set forth herein.

5     76.     As described herein, Carlsson made certain representations to Barnes

6  during the course of negotiating the contract that were untrue, inaccurate and/or

7  misleading.

8     77.     Carlsson knew that those representations were false and intended to

9  induce Barnes to rely on those representations.

10     78.     Barnes justifiably relied on those misrepresentation to his detriment.

11  Carlsson's misrepresentations to Barnes are the direct and proximate cause of his

12  damages in an amount to be proven at trial.

13

## **<u>PRAYER FOR RELIEF</u>**

14     WHEREFORE, Barnes respectfully requests that the Court enter judgment in

15  his favor and against counter-defendants Carlsson as follows:

16     1. A preliminary and permanent injunction be issued pursuant to 17 U.S.C. §

17  502 restraining and enjoining Carlsson and each of them and all those acting at their

18  direction or pursuant to their control, from advertising, promoting, reproducing,

19  displaying, manufacturing, distributing, licensing and performing in any venue or

20  media the unauthorized derivative work, the Swedish *Dandy* novel and related

21  products and merchandise and any other work which infringes upon Barnes'

22  copyright.

23     2. Awarding Barnes compensatory damages, pursuant to the February 2, 2007

24  and September 19, 2007 agreements.

25     3. Awarding Plaintiff his pre-judgment, post-judgment and monetary interest

26  as provided by law.

27     4. Awarding Barnes exemplary, punitive or treble damages as provided by

28  law.

5. Awarding Barnes prevailing party attorney fees and related costs in this action pursuant to 17 U.S.C. §505.

6. Awarding Barnes such other and further relief as the Court deems just and proper.

Dated: July 22, 2011                         Respectfully submitted:

                                             **ZUBER & TAILLIEU LLP**
                                             OLIVIER A. TAILLIEU
                                             SARAH S. BROOKS


                                    By:  /s/Sarah S. Brooks
                                         Attorneys Defendant Jason Barnes, p/k/a
                                         Jazan Wild

13

DEFENDANT JASON BARNES P/K/A JAZAN WILD'S FIRST AMENDED COUNTERCLAIMS
AGAINST ANDREAS CARLSSON PRODUCTIONS