UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | | Date | June 18, 2012 |
|---|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Graham Lippsmith | Jason Barnes, *Pro Se* | |

**Proceedings:**  **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO COUNTERCLAIMS** (filed 5/14/2012)

## I.    INTRODUCTION

On November 4, 2010, plaintiffs Andreas Carlsson Productions, AB ("ACPA") and Andreas Carlsson ("Carlsson") filed a complaint in the instant action against defendant Jason Barnes ("Barnes"), p/k/a Jazan Wild, alleging that Barnes entered into a work-for-hire agreement with plaintiffs to coauthor a treatment for a comic book and three subsequent graphic novels loosely based on Carlsson's life story.  Compl. ¶¶ 3, 20, 21.  Plaintiffs allege claims for: (1) copyright infringement pursuant to 17 U.S.C. § 501; (2) declaratory judgment with respect to copyright ownership; (3) breach of contract; (4) declaratory judgment with respect to contract rights; (5) defamation; (6) intentional interference with prospective economic relations; and (7) negligent interference with prospective economic relations.

On July 22, 2011, Barnes filed first amended counterclaims ("FACC") against ACPA and Carlsson concerning the "rights, credits and compensation due for five separate novels."  FACC ¶ 1.  The FACC alleges claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) declaratory judgment regarding copyright ownership; (4) copyright infringement; (5) negligent misrepresentation; and (6) fraud in the inducement.

On May 14, 2012, plaintiffs filed the instant motion for summary judgment as to defendant's FACC.  Dkt. No. 51.  Barnes filed his opposition on May 25, 2012, and plaintiffs filed their reply on June 4, 2012.  Dkt. Nos. 58, 64.  Plaintiffs also filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

evidentiary objections to Barnes's declaration and evidence filed in support of his opposition. Dkt. No. 65. The Court held a hearing on the matter on June 18, 2012. After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

**II. BACKGROUND**

Carlsson is a well-known songwriter who has written or cowritten songs for artists such as Celine Dion, Katy Perry, Backstreet Boys, Britney Spears, and Bon Jovi. Plaintiffs' Statement of Undisputed Fact ("PSUF") ¶¶ 1–2.[1] Barnes is an author and musician and owns a comic book company called Carnival Comics. FACC ¶ 9.

In 2004, Carlsson recorded and began selling an early version of the song "Have My People Call Your People." PSUF ¶ 4. This song was "the first step" toward creating *Dandy*, a musical and graphic novel "based on Carlsson's life." Id. ¶ 5. According to Carlsson, he wrote more songs in 2006 that "culminated into . . . a story of a character living a care free life." Id. ¶ 7. Carlsson asserts that he conferred with Gene Simmons of the band KISS for advice, and thereafter "decided to convert his album into a complete musical based on his own life." Id. ¶ 8.

In early November 2006, Carlsson enlisted Barnes to create a graphic novel based on *Dandy*. Id. ¶ 12. On November 20, 2006, Barnes registered a treatment for "DANDYWORLD Andreas Carlsson and Jazan Wild" (the "Treatment") with the Writer's Guild of America. Id. ¶ 13. The parties negotiated Barnes's compensation for

---

[1] Barnes's statement of genuine issues in opposition to plaintiffs' motion for summary judgment simply reiterates the arguments made in his opposition. It does not conform to Local Rule 56-2, which provides that a statement of genuine issues must set forth "all material facts as to which it is contended there exists a genuine dispute necessary to be litigated." Defendant is admonished to follow all local rules. Failure to do so may result in sanctions at the discretion of the Court. L-R 11-9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

the Treatment culminating in a written, signed agreement dated February 2, 2007 (the "Agreement"). See Declaration of Graham B. LippSmith ("LippSmith Decl."), Exh. H.[2]

Under the terms of the Agreement, Barnes drafted the Treatment "based on Company's [ACPA's] concept for 'Dandy.'" Id. § 1. In consideration for his work on the Treatment, Barnes was paid $7,500 in fixed compensation and would also receive contingent compensation in the form of 25 percent "of Company's net receipts from such comic book or other literary work, if any," and 12 percent "of Company's net receipts from merchandising and other commercial activities" in the event the Treatment was "substantially used in the production of a motion picture, television program, musical and/or stage play[.]" Id. § 2(a)–(b). The Agreement also contained a "favored nations clause" under which Barnes would "receive a credit substantially in the form of: 'Created by Andreas Carlsson and Jazan Wild'" in the event the Treatment was "substantially used in the production of a comic book or other literary work." Id. § 5.

The Agreement contains the following language:

3. Rights. All material written by you [Barnes] hereunder, including the Treatment (the 'Work') shall be prepared within the scope of your employment hereunder and shall be a 'work made for hire' for Company as specially commissioned for use as a part of a literary work. Without limiting the foregoing, Company shall have the exclusive right to register the copyright in all such Work in Company's name as owner and author thereof. In this connection, you shall sign the short form assignment in the form of Exhibit 'A' annexed hereto.

* * *

6. Other Terms. Your sole right as to any breach hereunder by Company shall be the recovery of money damages, if any, and the rights herein granted by you

---

[2]Neither party labeled or tabbed their exhibits as required by Local Rule 11-5. E.g., L-R 11-5.3 ("Exhibits shall be tabbed in sequential order."). The parties are admonished to follow all local rules in future filings. Failure to do so may result in sanctions at the discretion of the Court. L-R 11-9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

shall not terminate by reason of such breach. In no event may you terminate or seek to terminate this agreement or obtain or seek to obtain injunctive or other equitable relief with respect to any breach of Company's obligations hereunder.

7. Miscellaneous.

* * *

(d) Your status hereunder shall be that of an independent contractor, and nothing herein shall create an employment relationship between the parties. Nothing herein contained shall constitute a partnership or a joint venture between you and Company.

Id. §§ 3, 6, 7(d).

Exhibit A to the Agreement further provides:

ASSIGNMENT by JASON BARNES p/k/a "Jazan Wild" (the "Assignor") to ANDREAS CARLSSON PRODUCTION A.B. (the "Assignee").

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, the Assignor hereby grants, assigns, transfers and conveys to the Assignee all of the Assignor's right, title and interest in and to that certain Treatment, as defined in that certain Agreement to which this Assignment is attached, which Treatment is hereinafter referred to as the "Work[,]" and all rights therein (whether now or hereafter known), including without limitation all copyrights therein now or hereafter existing and all renewals and/or extensions of such copyrights, throughout the universe. This Assignment includes the transfer and conveyance of all rights and benefits appurtenant to the Work. The Assignor undertakes to take any and all steps requested by the Assignee to effectuate the Assignment herein.

Id., Exh. A at 1 (notarized and signed by both parties dated February 2, 2007).

After signing the Agreement and exhibits thereto, Carlsson and Barnes continued working together on the *Dandy* project and agreed to expand it into a three-part series of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

graphic novels. FACC ¶ 25. The first graphic novel, *Dandy: Welcome to a Dandyworld*, was completed in early 2007. In late May 2007, the second and third novels, *Dandy: Step Into the Krazy Life* and *Dandy: All Hail the King* were completed and registered with the Writers Guild of America. Id. ¶ 26.

On September 19, 2007, the parties executed an amendment (the "Amendment") to the Agreement covering the final two chapters in the *Dandy* trilogy. The Amendment guarantees Barnes $7,500 in total fixed compensation per graphic novel, and offers contingency compensation in the form of 50 percent of the net receipts from such comic book or literary work, 20 percent of the net receipts from merchandising and other commercial activity if the Treatment was "substantially used in the production of a comic book or other literary work," and 20 percent of the "Company's net receipts from the exploitation of the motion picture, television program, musical or stage play." LippSmith Decl., Exh. H §§ 2, 3. The Amendment also contains the following ratification provision: "Except as set forth herein, the Agreement is hereby ratified and affirmed." Id. § 5.

According to Carlsson, he spent the next three years investing resources to develop *Dandy* into a viable commercial project by paying third-party illustrators to illustrate the graphic novels, meeting with financial advisers, and attempting to convert the graphic novel into a live action musical. PSUF ¶¶ 46–50. To date, none of the three *Dandy* graphic novels have been published, despite Barnes's contention that Carlsson promised him they would be. FACC ¶¶ 35–37.

Instead, on February 11, 2010, Carlsson contracted with major Swedish publishing house Nordsteds to publish a version of *Dandy* as a novel in Sweden. See LippSmith Decl., Exh. M. Carlsson also contracted with McDonald's to promote the book. Id., Exh. L. In June 2010, Barnes learned that the Swedish book was based on the three *Dandy* graphic novels and thereafter contacted Carlsson to ensure he would be credited as writer and cocreator of *Dandy*, and Carlsson told Barnes he would be. FACC ¶ 40. Nevertheless, Barnes contacted Norstedts shortly thereafter and asserted several times that he was the writer and creator of *Dandy*. See LippSmith Decl., Exh. N (undated letter from Barnes to Norstedts stating that "I am the writer of 'Dandy'" and that "currently I have a legal issue with the crediting of this book"); Exh. O (September 26, 2010 email from Barnes to Norstedts stating, inter alia, that "I am a percentage owner of this story" and "[i]f one book gets sold without my name on the cover . . . I will sue"). Barnes also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

published the three *Dandy* graphic novels on his website formerly at the URL <http://www.jazanwild.com/DANDY/> as evidence that he should be credited as a creator of the Swedish Novel. Id., Exh. O.

On October 19, 2010, Norstedts published the 400 page Swedish Novel entitled *Andreas Carlsson Dandy* (the "Swedish Novel").[3] FACC ¶ 41. On the inside cover, it states that the novel was "inspired by a graphic novel created by Andreas Carlsson and Jazan Wild." Id. ¶ 42. According to Barnes, he has not received any contingent compensation for any sales of the Swedish Novel, which allegedly reached #1 on the Swedish bestseller charts. Id. ¶ 43.

In late October 2010, Barnes and his attorneys sent various letters to Carlsson, Norstedts, McDonald's, Swedish bookstores, and others. For example, on October 4, 2010, Barnes wrote an email to Norstedts that included a link to his website containing the three *Dandy* graphic novels in an attempt to prove that he had created the *Dandy* story on which the Swedish Novel was based. See Barnes Decl. at 38, Exh. 44 (stating that "this link is a private link and is shared only with those related to this issue").

Plaintiffs, in response to Barnes's alleged threats, filed suit on November 4, 2010, alleging that Barnes infringed on their copyright by posting the three *Dandy* graphic novels on his website and thereby materially breached the Agreement. Barnes, in turn, filed counterclaims as set forth herein.

### III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential

---

[3] Barnes takes particular issue with the title *Andreas Carlsson Dandy* because, according to Barnes, Norstedts used this title only to skirt the "most favored nations" clause. See Barnes Decl. at 32–33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**IV. DISCUSSION**

    **A. Ownership of the Copyright in the Various *Dandy* Works**

Both sides have asserted claims for declaratory relief regarding copyright ownership of the various *Dandy* works. At issue for purposes of the present motion is Barnes's claim of copyright ownership of the *Dandy* Treatment and the three *Dandy* graphic novels.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

"The Copyright Act of 1976 provides that copyright ownership 'vests initially in the author or authors of the work.'" Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989) (quoting 17 U.S.C. § 201(a)). As a general rule, the author is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." Id. (citing 17 U.S.C. § 102). However, if the work is "for hire," then the "employer or other person for whom the work was prepared is considered the author and owns the copyright, unless there is a written agreement to the contrary." Id. (internal quotation marks and citation omitted). Further, a copyright owner may transfer interest in the copyright if it is "in writing and signed." 17 U.S.C. § 204(a); see also Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990).

Carlsson asserts that he is the rightful owner of the copyrights in the various *Dandy* works for two independent reasons: first, because the work was a "work made for hire," or alternatively, because Barnes assigned his interest in the copyrights to Carlsson. Mot. at 8–12.

In opposition, Barnes asserts that because he wrote the Treatment in November 2006 prior to entering into the agreement with plaintiffs, it cannot be considered a "work for hire." Opp'n at 8. Further, Barnes argues that the Assignment, which states that the assignment is for "all copyrights therein or now hereafter existing," violates the Copyright Act's rule that permits an author to rescind an assignment after 35 years. Id. Finally, Barnes contends that he was fraudulently induced into accepting the terms of the Agreement and Assignment. See Barnes Decl. at 56.

### 1. The *Dandy* Treatment

As an initial matter, Barnes is correct that the Treatment cannot be a "work-made-for-hire" because it was written in November 2006, more than two months prior to the parties' written Agreement of February 2, 2007. See Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 412–13 (7th Cir. 1992) ("The writing must precede the creation of the property" to qualify as a work made for hire); Gladwell Gov't Servs., Inc. v. Cty of Marin, 265 Fed. Appx. 624, 626 (9th Cir. Jan. 28, 2008) ("The plain language of the statute indicates that a work-for-hire agreement cannot apply to works that are already in existence."). However, the notarized Assignment signed by both parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

demonstrates that Barnes assigned his interest in the Treatment to plaintiffs as a matter of law. See LippSmith Decl., Exh. A to Exh. H, at 1 ("[T]he Assignor hereby grants, assigns, transfers and conveys to the Assignee all of the Assignor's right, title and interest in and to that certain Treatment . . . including without limitation all copyrights . . . ."); Kassbaum v. Steppenwolf Prods., Inc., 236 F.3d 487, 491 (9th Cir. 2000). Barnes's contention that he should be allowed to rescind or revoke the assignment is unpersuasive, as the Copyright Act permits termination of an assignment only in the event of the author's death or during a five year period that begins "at the end of thirty-five years from the date of the execution of the grant," neither of which has occurred here. 17 U.S.C. § 203(3).

Accordingly, to the extent Barnes claims an interest in the Treatment's copyright, his claim fails as a matter of law.[4] Plaintiffs' motion is therefore GRANTED insofar as they seek a declaration of copyright ownership in the Treatment.[5]

---

[4]In California, a Court may consider parol evidence "to explain the meaning of the terms of a contract even when the meaning appears unambiguous." Foad Consulting Grp., Inc. v. Azalino, 270 F.3d 821, 826 (9th Cir. 2001). Barnes, however, has not set forth any extrinsic evidence suggesting that the parties' intent differed from the plain language of the Assignment. E.g., Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1143 (9th Cir. 2003).

[5]At oral argument, counsel for plaintiffs asserted that the February 2, 2007 agreement covers both the Treatment and the first *Dandy* graphic novel. The Agreement, however, states:

    1.    Writing Services. You [Barnes] will render the following writing services in connection with the drafting of a treatment (the "Treatment") based on Company's concept for "Dandy" (the "Concept"):

        (a)    You will write and deliver a first draft of the Treatment based on the Concept, receipt of which is acknowledged; and

        (b)    At Company's request, you will re-write the Treatment and deliver a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

### 2. The Three *Dandy* Graphic Novels

Plaintiffs maintain that the three graphic novels represent works made for hire. Mot. at 8–10.

Unlike the Treatment, the three *Dandy* graphic novels were written after the parties signed the February 2, 2007 Agreement. See FACC ¶¶ 25–26. Thus, the question is whether the works are works made for hire. A "work made for hire" is "a work prepared by an employee within the scope of his or her employment," or certain works specifically ordered or commissioned. See, e.g., Warren Freedenfeld Asscs., Inc. v. McTigue, 531 F.3d 38, 48 (1st Cir. 2008).

Whether a hired party is an employee is determined "under the general common law of agency." Comm. for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989). In making this determination, the Court must:

> consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

---

second draft within 3 weeks of Company's request for the same.

LippSmith Decl., Exh. H, § 1(a)–(b).

Likewise, the Assignment pertains only to the Treatment "as defined in that certain Agreement to which this Assignment is attached[.]" Id., Exh. A. Accordingly, nothing in the Agreement or Assignment expressly states that the contracts involve the first *Dandy* graphic novel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

Id. at 751–52.

By contrast, whether an independent contractor's work "is a work for hire depends on whether it satisfies the terms of § 101(2)." Id. at 753. Section 101(2) sets forth the following categories of work that may be considered for hire:

> [A] work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101(2).

Here, the Agreement is unclear whether Barnes is an employee or an independent contractor. For example, the Agreement expressly states that "[a]ll material written by you [Barnes] hereunder . . . shall be prepared within the scope of your employment hereunder and shall be a 'work made for hire[.]'" LippSmith Decl., Exh. H, § 3. Later, however, the Agreement states: "Your [Barnes's] status hereunder shall be that of an independent contractor, and nothing herein shall create an employment relationship between the parties." Id. § 7(d).

The distinction is important, because a literary work—such as a graphic novel—is not among the enumerated subject matter that qualifies as an independent contractor's "work made for hire" pursuant to § 101(2). See 4 Melville B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT § 5.03 (Matthew Bender, Rev. Ed.); 2 Patry on Copyright § 5:75 ("[W]orks that do not fit into the nine categories [include] . . . novels[.]"). In other words, if Barnes is considered an independent contractor, he will own the copyrights in the graphic novels. By contrast, if he is considered an employee working within the scope of his employment, plaintiffs will own the copyrights. 17 U.S.C. § 101; see 1 Melville B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT § 5.03[A] (Matthew Bender, Rev. Ed.) (concluding that, for purposes of ownership, "it is vital under the current Copyright Act to determine whether a work has been made for hire").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

According to plaintiffs, the graphic novels are works made for hire because Carlsson had the "right to control the manner and means" by which Barnes completed the project in light of the fact that *Dandy* is loosely based on Carlsson's life. Mot. at 10. According to Barnes, the *Dandy* story is so loosely based on Carlsson's life that Carlsson's control over the project was minimal. Further, Barnes asserts that he never intended to enter into a work-made-for-hire relationship. Importantly, nothing in the Agreement indicates that plaintiffs provided Barnes with any employee benefits or social security taxes. See, e.g., Aymes v. Bonelli, 980 F.2d 857, 863 (2d Cir. 1992) (concluding that "[t]he importance of these two factors is underscored by the fact that every case since Reid that has applied the test has found the hired party to be an independent contractor where the hiring party failed to extend benefits or pay social security taxes").

Because the parties dispute material facts with regard to whether Barnes was an employee or independent contractor at the time he wrote the *Dandy* graphic novels, summary judgment is inappropriate. Accordingly, plaintiffs' motion is DENIED insofar as it concerns the copyright ownership of the *Dandy* graphic novel.

### B. Negligent Misrepresentation and Fraudulent Inducement

Barnes's fifth and sixth counterclaims, for negligent misrepresentation and fraudulent inducement, are based on allegations that plaintiffs "induce[d] Barnes to enter into the agreements" or "induce[d] Barnes to rely on" certain representations "during the course of negotiating the contract." See FACC ¶¶ 73, 76–77.

Plaintiffs argue that both claims are preempted by the Copyright Act. Mot. at 16–17. Specifically, plaintiffs argue that Barnes's fraud-based counterclaims do not seek to protect rights "which are qualitatively different from copyright rights." Id. at 16 (quoting Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987) overruled on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)). Barnes does not address preemption in his opposition.

All state law claims that fall within the scope of the Copyright Act are subject to preemption. See Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1137 (9th Cir. 2006). The Ninth Circuit utilizes a two-part test to determine copyright preemption: first, the work must be copyrightable. Valente-Kritzer Video v. Pinckney, 881 F.2d 772, 776 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

Cir. 1989). This element is plainly established here. Second, the Court must analyze the state law claim to assess whether it is "equivalent to any of the exclusive rights within the general scope of copyright" as specified by 17 U.S.C. § 106. Id. "To survive preemption, the state cause of action must protect rights which are qualitatively different from copyright rights. . . . The state claim must have an 'extra element' which changes the nature of the action." Del Madera, 820 F.2d at 977 (internal citation omitted). To determine preemption, the court must "engage in a fact-specific inquiry into the actual allegations underlying the claims at issue in the case, so as to determine whether the gravamen of the state law claim asserted is the same as the rights protected by the Copyright Act." Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1190 (C.D. Cal. 2001); see also AtPac, Inc. v. Aptitude Solutions, Inc., 787 F. Supp. 2d 1108, 1115 (E.D. Cal. 2011).

Here, Barnes alleges that after he wrote the Treatment, "Carlsson told Barnes that they were partners and that if he signed the agreement his hard work would 'pay off.'" FACC ¶ 19. Barnes further alleges that Carlsson "promised Barnes that the three *Dandy* novels would be published in September[] 2010," and when they were not, Carlsson allegedly promised Barnes they would be published in spring 2011. Id. ¶¶ 35–37. According to Barnes, the novels have not been published to date. Id. ¶ 37.

In essence, Barnes alleges that Carlsson intentionally misrepresented the nature of their relationship prior to entering into the written contract, and thereafter continued to misrepresent his intention to publish the three *Dandy* graphic novels. Because these allegations "contain[] the element of misrepresentation—not present in a claim for copyright violation"—Barnes's fraud-based claims are "not preempted." Lukens v. Broder/Kurland Agency, 2000 WL 35892340, at *4 (C.D. Cal. Sept. 14, 2000); Valente-Kritzer, 881 F.2d at 776 (concluding that a "common law fraud [claim] is not preempted by § 301 because the extra element of misrepresentation is present"); Di Elsi v. Falk, 916 F. Supp. 985, 992 (C.D. Cal. 1996) ("Plaintiff's fraud and negligent misrepresentation causes of action are not preempted by federal copyright law."); 3 Melville B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT § 1.01[B][1][e] (Matthew Bender, Rev. Ed.) ("[T]here is no pre-emption of the state law of fraud.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

Accordingly, the Court concludes the claims are not preempted. It now turns to the merits of Barnes's allegations.[6]

Barnes's fraudulent inducement claim "is essentially a claim of promissory fraud." Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 973 (1997).

"Promissory fraud" is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract. The elements of fraud that will give rise to a tort action for deceit are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage.

Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 973–74 (1997) (citations omitted); see also Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).

Barnes's negligent misrepresentation claim is comprised of similar elements, but "does not require scienter or intent to defraud." OCM Principal Opportunities Fund v. CIBC World Markets Corp., 157 Cal. App. 4th 835, 845 (Cal. Ct. App. 2007).

Here, none of the evidence offered by Barnes suggests that Carlsson made any misrepresentations regarding a partnership between he and Barnes in an attempt to induce Barnes's acceptance of the Agreement. In early email exchanges between the parties, Barnes expressed his belief that he was a "co-creator" and did not want to be a "pay for

---

[6]Because "[p]reemption analysis merely asks whether the state law right as alleged falls 'within the subject matter of copyright,' not whether it states a viable claim under the state law," the Court is not required to decide the merits of the fraud-based claims. AtPac, Inc. v. Aptitude Solutions, Inc., 787 F. Supp. 2d, 1108, 1114 n. 6 (E.D. Cal. 2011) (quoting 17 U.S.C. § 301(a)). Nevertheless, for the reasons stated herein, Barnes's fraud-based claims fail as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

hire treatment guy, with no rights." See LippSmith Decl., Exh. D (email dated January 5, 2007). In response, Carlsson stated that "I am sorry but I am not giving up any rights . . . Dandy is my life and my story, with flavors and characters added by you. . . . I offered to cut you in on the musical and the movie if they would ever be[come] reality, you get a piece of merchandise and paid for your time plus 25 percent of the comic. To me a generous offer. To be a partner is something different[;] then you invest together." Id. (email dated January 5, 2007). Thereafter, the parties signed the Agreement with express language that "[Barnes's] status hereunder shall be that of an independent contractor, and nothing herein shall create an employment relationship between the parties. Nothing herein contained shall constitute a partnership or a joint venture between you and Company." LippSmith Decl., Exh. H, § 7(d). Barnes's argument that he relied on oral representations that he would be a partner in the *Dandy* project is belied by emails exchanged between the parties and the express terms of the Agreement, which clearly state that Barnes is not a partner with Carlsson. Thus, the evidence proffered by Barnes simply does not demonstrate an actionable misrepresentation.

Moreover, in August 2007, Carlsson actually did offer to be "equal partners in sales" with Barnes with respect to the second and third *Dandy* graphic novels. Barnes, however, rejected the offer by email dated August 4, 2007, writing that instead of making it 50/50, "lets [sic] make it 30 (me) 70 (Andreas) across the board. This way it's clearly in Andreas' control. It should also say that Andreas has full control of everything." LippSmith Decl., Exh. G; see also id., Exh. H, § 7(b). Again, Barnes's proffered evidence of misrepresentation fails as a matter of law insofar as he contends Carlsson promised him a partnership.

The only remaining question is whether Carlsson's alleged misrepresentation that the three *Dandy* graphic novels would be published within a certain timeframe is actionable fraud. The Court concludes that it is not. First, Barnes has not demonstrated any justifiable reliance on Carlsson's alleged misrepresentations about the publishing of the three *Dandy* graphic novels. "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." Alliance Mortg. Co. v. Rothwell, 10 Cal. 4th 1226, 1239 (1995). "[W]hether a party's reliance was justified may be decided as a matter of law if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

reasonable minds can come to only one conclusion based on the facts." Guido v. Koopman, 1 Cal. App. 4th 837, 843 (Cal. Ct. App. 1991). Here, no justifiable reliance exists as a matter of law because Barnes did not "alter[] his . . . legal relations," nor did he "enter[] into" a transaction based on these alleged promises. Rothwell, 10 Cal. 4th at 1239.

Second, Barnes has not demonstrated damages arising out of these alleged misrepresentations. Nothing in the Agreement guaranteed that the three *Dandy* graphic novels would be published. Accordingly, even if Carlsson represented to Barnes that the novels would be published, Barnes has suffered no damages as a result.

For the foregoing reasons, plaintiffs' motion for summary judgment is GRANTED as to Barnes's fifth and sixth counterclaims for fraudulent inducement and negligent misrepresentation.

  **C. Breach of Contract and Breach of the Implied Warranty of Good Faith and Fair Dealing**

"The standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'" Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2008) (quoting Regan Roofing Co. v. Superior Court, 24 Cal. App. 4th 425, 434–435 (Cal. Ct. App. 1994)).

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Kransco v. American Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000) (internal quotation marks and citation omitted). "The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract." Foley v. Interactive Data Corp., 47 Cal. 3d 654, 690 (1988). "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." Smith v. City and Cnty of San Francisco, 225 Cal. App. 3d 38, 49 (Cal. Ct. App. 1990).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

Barnes alleges that Carlsson breached the terms of the Agreement by not paying Barnes any royalties from sales of the Swedish Novel and by failing to comply with the Agreement's "most favored nations" clause with regard to the Swedish Novel. FACC ¶ 50. Barnes also alleges that these actions breached the implied covenant of good faith and fair dealing. Id. ¶ 56.[7]

Plaintiffs argue that Barnes's material breach of the Agreement by posting the three *Dandy* graphic novels online and allegedly defaming Carlsson to Swedish publishers terminated plaintiffs' duty to perform. Mot. at 13. Plaintiffs assert that, because they did not breach the contract, Barnes's claim for breach of the implied covenant of good faith and fair dealing likewise fails. Id. at 14. Alternatively, plaintiffs contend that the latter claim fails because the parties were not in a special relationship such that Barnes is entitled to recover tort damages under these circumstances. Id.

In opposition, Barnes asserts that he has "adequately pled" all of the elements of a breach of contract claim.[8] Opp'n at 9. As to his claim for the implied covenant of good faith and fair dealing, Barnes argues that "Carlsson's repeated stalling and assurances" to Barnes that the three *Dandy* novels would be published, "while at the same time working

---

[7]In his declaration in opposition to plaintiffs' motion, Barnes sets forth significantly more allegations of alleged breaches of contract. For example, Barnes argues that Carlsson never credited Barnes when pitching the Swedish Novel to various third parties. However, Barnes may not pursue these allegations because they were not pled in the FACC. E.g., Schneider v. Cal. Dept. of Corrections, 151 F.3d 1194, 1197 n.2 (9th Cir. 1998) (in deciding the sufficiency of allegations, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition . . . ."); 2 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

[8]Barnes is mistaken as to the standard on summary judgment. Barnes must establish that there are genuine issues as to material facts; the adequacy of the pleading is no longer the focus. See Fed. R. Civ. P. 56(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

on his Swedish novel, calls into question his good faith in entering into this contract." Id. at 10.

The Court finds that there are triable issues as to Barnes's claim for breach of the implied covenant of good faith and fair dealing. It is undisputed that the parties contracted to work together on various *Dandy* works in an attempt to create a commercially viable project. See Spencer, 642 F. Supp. 2d at 1165 (claim for breach of implied covenant may lie only if parties are in a "contractual relationship"). Although the Agreement does not contain language guaranteeing that the three *Dandy* graphic novels will be published, that was the Agreement's plain intent. See LippSmith Decl., Exh. H § 2(a)–(b) (listing various contingent compensation due to Barnes upon sale of various *Dandy*-based works). Viewing the facts "in the light most favorable to the party opposing the motion," as the Court must, Barnes has presented a triable issue of fact as to whether Carlsson's efforts to write and publish the Swedish Novel, instead of the three *Dandy* graphic novels, "injure[d] the right of [Barnes] to receive the benefits of the agreement." Matsushita, 475 U.S. at 587; Kransco, 23 Cal. 4th at 400. For example, Carlsson sent an email to Barnes on March 27, 2010, asking for Barnes's input as to what to rename the locations in *Dandy* from "real places to made up locations," such as from "Sweden" to "Lost End." Barnes Decl., Exh. 28 (also asking: "New Orleans—not sure yet . . . any ideas???").[9] According to Barnes, he assumed this email was with regard to

---

[9]Plaintiffs object to virtually every one of Barnes's 100-plus exhibits attached to his declaration. Plaintiffs object to exhibits 28 and 29—both of which are emails written by Carlsson and received by Barnes—as lacking foundation under Fed. R. Evid. 602. However, Barnes's declaration states that he has "personal knowledge of the matters stated in this declaration" and that the emails attached as exhibits 28 and 29 are "true and correct cop[ies]." Barnes Decl. at 1, 61. Because Barnes states that he has personal knowledge of the emails' contents, he has properly authenticated the documents. See Fed. R. Evid. 901(b)(1); Jimena v. UBS AG Bank, Inc., 2011 WL 2551413, at *3 (E.D. Cal. June 27, 2011) ("A party seeking admission of [email] evidence need only make a prima facie showing of authenticity."); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002). Accordingly, the Court OVERRULES plaintiffs' objections to those two exhibits. Because the Court does not rely on any other exhibits attached to Barnes's declaration, plaintiffs' objections thereto are OVERRULED as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

word choice in the three *Dandy* graphic novels, while in fact Carlsson intended to use Barnes's suggestions in the Swedish Novel. See Barnes Decl. at 29–30. Further, when Barnes asked Carlsson when the three *Dandy* graphic novels were to be published, Carlsson responded with the following email:

> Hey Buddy! We are working on this but first of all a novel that I wrote (think Twilight) is coming out in October. Graphic Novel will be out in the Spring. My LIVE TO WIN book is now at its 7th edition, that's why we decided to release two books. Life is good! Can't wait to see you!! ROCK ON! AC

Barnes Decl., Exh. 29; see also id., Exh. 28 ( email stating: "Good news . . . Dandy, our favorite hero[,] will be released in Sept[ember]!").

    The book that Carlsson likened to the "Twilight" franchise, however, was actually the Swedish Novel based on *Dandy*. Although Carlsson argues that his attempts to publish the three *Dandy* graphic novels were "thwarted" by Barnes's alleged defamation of his character, Barnes contends that he wrote to the Swedish publishers only after learning of Carlsson's intent to publish the Swedish Novel instead of the graphic novels. Such factual disputes are for the jury to decide. See, e.g., McCollum v. Xcare.net, Inc., 212 F. Supp. 2d 1142, 1153 (N.D. Cal. 2002) (denying summary judgment as to breach of implied covenant claim because "[t]here are disputed questions of fact from which a fact finder could conclude" that defendant's actions were "intended to frustrate" plaintiff's "legitimate expectations" under the contract); see also 3 Melville B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT § 10.11[B] (Matthew Bender, Rev. Ed.) ("[T]here is an implied covenant that the grantee will not circumvent the royalty agreement by creating a new work based upon the prior work, or based upon the same idea, theme, or title, even if a stranger could create a new work with such idea, theme[,] or title, without infringing the grantor's copyright.").

    For the foregoing reasons, there are triable issues of material fact as to Barnes's claim for breach of the implied covenant of good faith and fair dealing. Plaintiffs' motion is therefore DENIED as to that claim. Moreover, because Barnes's breach of contract claim is inextricably intertwined with his claim for breach of the implied covenant, plaintiffs' motion is DENIED as to that claim as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8396 CAS (CWx) | Date | June 18, 2012 |
|---|---|---|---|
| Title | ANDREAS CARLSSON PRODUCTIONS, AB; ET AL. v. JASON BARNES | | |

## V.   CONCLUSION

In accordance with the foregoing, plaintiffs' motion for summary judgment is GRANTED as to Barnes's claims for copyright infringement declaratory relief insofar as those claims arise out of the Treatment.  Plaintiffs' motion is also GRANTED as to Barnes's claims for fraudulent inducement and negligent misrepresentation.

Plaintiffs' motion is DENIED as to Barnes's claims for copyright infringement and declaratory relief insofar as those claims arise out of the *Dandy* graphic novels.  Plaintiffs' motion is also DENIED as to Barnes's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

IT IS SO ORDERED.

|   |   |   | 00 | : | 09 |
|---|---|---|---|---|---|
|   |   | Initials of Preparer |   | CMJ |   |